## EDLER v. EDWARDS, State Auditor.

No. 1929.   Decided April 6, 1908 (95 Pac. 367).

1. STATUTES — SUBJECTS AND TITLES — CONSTRUCTION OF CONSTITU-
TIONAL PROVISION—AMENDATORY ACTS.   Constitution, art. 6, sec.
23, providing that no bill shall be passed containing more than
one subject, which shall be clearly expressed in its title, in   so
far as it applies to amendatory acts, should be liberally construed
so as to guard against the real evil which it was intended to
meet, and applied so as not to hamper the Legislature in adopt-
ing comprehensive measures covering a whole subject, the
branches of which may be numerous, but all have some direct
connection with or relation to the principal subject treated.

2. CONSTITUTIONAL LAW — STATUTES — VALIDITY—CONSTRUCTION IN
FAVOR.   A statute will not be held unconstitutional unless its
invalidity is clearly and manifestly established.

3. STATUTES — SUBJECTS AND TITLES — NATURE OF CONSTITUTIONAL
PROVISION.   The provision of Constitution, art. 6, sec. 23, provid-
ing that no bill shall be passed containing more than one subject,
which shall be clearly expressed in its title, is mandatory.

4. SAME—AMENDATORY ACTS.   If an amendatory act contains matter
which might appropriately have been incorporated in the original
act under its title, and identifies the original act by its title and
declares the purpose to amend or supplement it, the provision of
Constitution, art. 6, sec. 23, that no bill shall be passed contain-
ing more than one subject, which shall be clearly expressed in its
title, is sufficiently satisfied.

5. SAME—AMENDMENT OF SECTIONS OF A CODE.   Any one or more
sections of a Code or Compilation may be amended by simply stat-
ing in the title of the amendatory act that it is to amend the
sections designated, and all sections, the subject-matters of which
are germane or related to each other, may be included in one
amendatory act.

6. SAME—SUBJECT OF AMENDATORY ACT.   The subject of an act
amending certain sections of a Code or Compilation, within the
constitutional provision that no bill shall be passed containing more
than one subject, which shall be clearly expressed in its title, is
contained in the statement which refers to the sections by numbers,
and asserts a purpose of amending them.

7. SAME—SUBJECTS AND TITLE OF ACT.   An amendatory act was en-
titled, "An act to amend section 2583, Revised Statutes of Utah
1898, as amended by chapter 65, Laws of Utah, 1901, and section
2050, Revised Statutes of Utah 1898," Laws 1907, p. 30, c. 28,
and the title contained, in addition, a synopsis of what the two

sections contain. Section 2583 was referred to as creating a State Board of Equalization, including its organization and duties, and fixing the salaries of its members, and section 2050 was said to fix the salaries of certain other state officers. *Held*, that the whole title was contained in the quoted words, and the statement of the contents of the sections to be amended being a mere explanation, and not a restriction of the amendment to any particular part of the sections, left any part of them open to amendment under the general title, the matters therein contained being all correlated.

8. SAME—AMENDMENT OF PROVISIONS OF CODE—PLURALITY OF SUBJECTS. A statute amended one section of a Code by increasing the salaries of the members of the State Board of Equalization, and amended another section by either increasing or diminishing the salaries of other appointive state officers named therein. *Held*, that the matters in the two sections amended were not incongruous, and did not make the subject of the amendatory act plural within Constitution, art. 6, sec. 23, providing that no bill shall be passed containing more than one subject, but it embraced the single subject of salaries or compensation.

9. SAME. A section of the Code related to "the State Board of Equalization, and its duties and organization," and also dealt with their salaries. An amendatory statute increased the salaries of the members of the board, and also contained a provision requiring the board to inspect and examine annually all property it is required to assess. *Held* that, in view of the facts that the requirement as to inspection while not expressed in the original section was clearly implied from the *quasi* judicial character of the board, and that the provision was directory merely though mandatory in form, the assessment being equally valid with or without the inspection, the provision for inspection in the amendatory statute was immaterial, and did not render the statute objectionable, as embracing a plurality of subjects.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Proceedings by the state, on the relation of A. B. Edler, against J. A. Edwards, as State Auditor, to determine the validity of a statute. Judgment for respondent, and relator appeals.

AFFIRMED.

*Goodwin & Van Pelt* for appellant.

*M. A. Breeden,* Atty. Gen., *A. R. Barnes,* Asst. Atty. Gen., *E. A. Walton* and *S. R. Thurman* for respondent.

### APPELLANT'S POINTS.

"We cannot agree with the contention of some of respondent's counsel—apparently to some extent countenanced by a few authorities—that the provisions of the Constitution in question can be entirely avoided by the simple device of putting into the title of an act words which denote a subject 'broad' enough to cover everything. Under that view, the title 'An Act concerning the Laws of the State' would be good. The word 'subject' is used in the Constitution in its ordinary sense, and when it says that an act shall embrace but 'one subject,' it necessarily implies—what everybody knows—that there are numerous subjects of legislation, and declares that only one of these subjects shall be embraced in any one act. All subjects cannot be conjured into one subject by the mere magic of a word in a title." (*State v. Nomland* [N. D.], 57 N. W. 85.)

The following are some of the more recent cases in which similar laws have been declared invalid: *State v. Stuart* [La.], 38 So. 974; *Jackson Square v. New Orleans,* 112 La. 957; *Farnia v. Frazer* [Mich.], 104 N. W. 147; *Beet Sugar Co. v. State* [Neb.], 102 N. W. 80; *Bell v. First Jud. Dist. Court* [Nev.], 81 Pac. 875.

"For an act to stand against the objections of plurality, the connection between its various parts must be apparent and not dependent on subtle reasoning." (*State v. Washoe Co.,* 22 Nev. 399.)

The Mich. Act of 1883, provided for the incorporation of merchant's insurance companies, and to regulate the business of insurance by merchants' and manufacturers' insurance companies, and was held obnoxious to the constitution because it embraced two subjects. (*Skinner v. Wilhelm* [Mich.], 30 N. W. 311.)

An act which gave power to toll and plank road companies to sell their road beds and franchises, is not germane to the

general purpose of the act which was to enable cities and townships to acquire them for the purpose of making them free from taxation. (*Grand Rapids v. Burlingame* [Mich.], 53 N. W. 620.)

An act which, under the guise of fixing fees of clerks of the probate court, in fact imposes a tax for purposes of revenue, is violative of the constitutional inhibition. (*Cook v. Fairbanks*, 78 N. E. 895, 222 Ill. 678; *State ex. rel. v. Hallock* [Nev.], 12 Pac. 832; *State ex. rel. v. McCann*, 72 Tenn. [4 Lea], 1.)

### RESPONDENT'S POINTS.

"The generality of the title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having any necessary or proper connection." (Cooley, Const. Lim., 206.)

An act fixing the time for the opening and closing of saloons and gaming houses embraces only one subject. (Ex *Parte Livingston*, 20 Nev. 282, 21 Pac. 322.)

An act to regulate the jurisdiction, duties and compensation of Justices and Constables has only one subject. (*Herbert v. Baltimore Co.*, 97 Md. 621.)

An act relating to the public roads of counties and the management of county work houses has but one subject. (*Condon v. Maloney* [Tenn.], 65 S. W. 871.)

"An act to amend certain sections, repeal certain sections, and to add new sections to a chapter of the code entitled 'oysters,' was held to embrace but one subject. (*Commonwealth v. Brown*, 21 S. E. 157.) And generally an amendatory act is not open to a charge of duplicity because it makes two or more amendments if the section amended relates to a common subject." (1 Lewis Sutherland Stat. Cons., 248.)

"To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other." (*State v. Ranson*,

73 Mo. 86; *State v. Algood,* 87 Tenn. 164; *State v. Howard,* 7 Mich. 10.)

"An act to amend several sections of a code which are cognate or related to each other, is not open to the objection that it embraces a plurality of subjects." (1 Lewis Sutherland Stat. Cons. 238; *Commonwealth v. Brown* [Va.], 21 S. E. 257; *Rowley v. Shepard,* 42 W. Va. 286; *Airy v. People* [Colo.], 40 Pac. 262; *Northern Counties v. Sears* [Ore.], 41 Pac. 931; *Coal Co. v. Partenheimer* [Ind.], 55 N. E. 751; *Isenhour v. State* [Ind.], 62 N. E. 40; *State v. Nomland,* 67 N. W. 85.)

FRICK, J.

This is a proceeding to determine the validity of chapter 28, p. 30, Laws Utah 1907. Chapter 28, p. 30, Laws 1907, aforesaid, is an act which is amendatory of section 2583, Rev. St. 1898, as amended by chapter 65, p. 66, Laws Utah. 1901, and section 2050, Rev. St. 1898. The principal change effected by the amendment of section 2583 was the increase of the salaries of the several members constituting the State Board of Equalization, and, so far as it related to sec. 2050, the increase of the salaries of some of the state officers and the reduction of the salary of the appellant as reporter of the decisions of this court. Appellant, as such reporter, and the respondent, as State Auditor, presented to the district court an agreed statement of facts from which that court was asked to determine the constitutionality of chapter 28, p. 30, Laws 1907, aforesaid, the appellant contending that the amendment of section 2050 was invalid, and that therefore he was entitled to receive a warrant for his salary from respondent at the old rate, while respondent contended that appellant was only entitled to a warrant for salary as fixed by the section as amended. The district court found for and entered judgment in favor of the respondent, and the matter is now presented to this court on appeal.

Appellant's sole contention is that chapter 28, p. 30, Laws Utah 1907, in so far as it affects his salary, is invalid because the act covers more than one subject. In other words,

34 Utah—2

it is contended that the subject-matter of section 2583 constitutes one subject, while section 2050 constitutes another subject, and that the two subjects are not correlated, but are incongruous, and cannot legally be united in one act without violating the provisions of section 23, art. 6, of the Constitution of this state, which, so far as material to this contention, provides: "No bill shall be passed containing more than one subject, which shall be clearly expressed in its title." In this case we are dealing entirely with an act by which it was sought to amend permanently numbered sections of the Revised Statutes of this state. Section 2583 was originally adopted in 1896 (Laws 1896, p. 446, c. 129, sec. 81), and was amended by an act known as chapter 65, p. 66, Laws 1901. In 1898 it was carried into the Revised Statutes as section 2583, and since then has retained its original number. Section 2050 was also originally passed in 1896, and incorporated into the Revised Statutes in 1898, and was also in some respects thereafter amended, but by implication merely in that such amendment was accomplished by separate, distinct, and independent acts by which the salaries of some of the officers mentioned therein, but not now in question, were changed. The question of titles to original acts, therefore, is not directly involved. Upon the question of titles to amendatory acts the cases are very numerous, but not always in strict harmony. The courts are, however, unanimous with respect to the following general rules to be observed: (1) That the constitutional provision now under consideration should be liberally construed; (2) that the provision should be applied so as not to hamper the lawmaking power in framing and adopting comprehensive measures covering a whole subject, the branches of which may be numerous, but where all have some direct connection with or relation to the principal subject treated; (3) that the constitutional provision should be so applied as to guard against the real evil which it was intended to meet; (4) that no hard and fast rule can be formulated which is applicable to all cases, but each must to a very large extent be determined in accordance with the peculiar circumstances and conditions thereof, and that the

decisions of the courts are valuable merely as illustrations
or guides in applying these general rules. Moreover, it
is now established beyond question that unless the invalidity
of a particular law in question is clearly and manifiestly
established the law must prevail as against such an objection.
If, therefore, by any reasonable construction, the title of the
act can be made to conform to the constitutional requirement,
it is the duty of the courts to adopt this construction rath-
er than another (if the title be open to more than one con-
struction) which will defeat the act. (1 Lewis' Suth. Stat.
Const. [2d Ed.], secs. 115-127, and cases there cited.) In
case of doubt it must be assumed that the Legislature under-
stood and applied the title so as to comply with the constitu-
tional provision, and not contrary thereto. If, after apply-
ing such a reasonable construction the title is insufficient, or
the subject is plural, then the law must fail. The provision
is mandatory, and may not be ignored.

With these general rules in mind we will now proceed to
an examination of the act in question, and briefly review the
law applicable. As we have pointed out, the act which is
assailed is amendatory merely of permanently numbered
sections which form a part of the substantive law of this
state. The rule applicable to the act in question is well and
tersely stated in section 137 of 1 Lewis' Suth. Stat. Const.
(2d Ed.), where the author, in referring to the constitutional
provision now under consideration, says:

"The constitutional requirement under discussion as applied to
acts of this character (amendatory acts), when they contain matter
which might appropriately have been incorporated in the original act
under its title, is satisfied generally if the amendatory or supplemen-
tal act identifies the original act by its title, and declares the pur-
pose to amend or supplement it. Under such a title, alterations by
excision, addition, or substitution may be made, and any provision
may be enacted which might have been incorporated in the original
act."

What has been said so far applies to the amendment of
laws or acts which have not been made a part of or incorpor-
ated into a Code, nor sectionized and consecutively numbered
and arranged in what are commonly designated as statutes or

general statutes of a state. The text quoted above is sustained by the overwhelming weight of authority, and we refer the reader for the numerous cases upon the subject to the note under the section above quoted from.

Referring, now, to section 141 of the same volume, in speaking of the particularity required of titles in amending a particular section or sections, the author states:

"It is held by the great majority of cases that it is sufficient for the title of an act to amend a Code or Revision to specify the section to be amended, without giving the title of the chapter or division to which it belongs or in any way indicating the subject-matter of the section. Under such a title any legislation is proper which is germane to the section specified."

And in section 139 of the same volume, in referring to the plurality of titles, it is said:

"An act to amend several sections of a Code, which are cognate or related to each other, is not open to the objection that it embraces a plurality of subjects."

From what has been said we may safely deduce the following propositions as guides, namely: That any one or more scetions of a Code or Compilation may be amended by simply stating in the title that the act is to amend the sections designated; that all sections the subject-matters of which are germane or related to one another may be included in one amendatory act specifying the sections to be amended; that the subject of such an act, within the constitutional provision, is contained in the statement which refers to the sections by numbers and asserts a purpose of amending them; that the legislators and all persons must take notice from such a title that the subject- matter of the sections specified is open for amendment by excision, by substitution, or by the addition of any new matter which is germane or directly related to the subject-matter of the sections proposed to be amended.

The title to the act in question stated the subject clearly and in unmistakable terms, but matter was added which, as we shall attempt to show, performed no function whatever, and

was useless for any purpose. So that we may afford the reader a better conception of our meaning we shall not treat the title as a whole, but will segregate the real title from the other parts. The material and controlling part of the title is as follows: *"An act to amend section 2583, Revised Statutes of Utah, 1898, as amended by chapter 65, Laws of Utah, 1901, and section 2050, Revised Statutes of Utah, 1898."* Then follows an epitomized statement or synopsis of what the two sections contain. Section 2583 is referred to as "creating a State Board of Equalization," including organization and duties and fixing the salaries of its members; and of section 2050 it is said that it fixes the salaries of certain other state officers. Considering it as a whole the title is profuse, but the extraneous matter added to what constitutes the actual title is harmless. The whole title is contained in the italicized words above given. What follows these neither adds anything to nor in any way restricts or modifies what is said in the title proper. It is merely a description of what is contained in the two sections sought to be amended. This was wholly unnecessary, and the elimination of this surplus matter is not only justified, but is required of us in order to preserve what we conceive to be a law constitutionally framed and passed. If what is contained in that part of the title which follows the italicized words had in any way restricted or modified the real title the case would be different. We would then have a case of a restricted title. To simply explain, however, what is contained in the sections sought to be amended without expressing a purpose to restrict the amendment to any particular part still leaves any part of those sections open to amendment under the general title. One of the matters contained in section 2583 was the salary provided for the several members of the State Board of Equalization, while the whole of section 2050 dealt with the salaries of some other appointive state officer. In amending section 2583 the salaries of the members of the State Board of Equalization were increased, while the salaries of the other officers mentioned in section 2050 were either increased or diminished with one or two exceptions. It is

asserted that while it may have been proper to have dealt
with the salaries of the members of the State Board of
Equalization by amending section 2583 in that regard, to do
this with respect to the other state officers named in section
2050 was improper, because the matters in the two sections
were incongruous, and thus constituted a plurality of sub-
jects. It cannot successfully be maintained that the salaries
or compensation of a large or small number of state officers
may not be fixed or changed in one act. In such an act the
subject would clearly be salaries or compensation. Nor can
we question the propriety of amending several sections in
which the salaries or compensation of different state officers
are designated, by one act amendatory of those sections. If
this be so, why was it improper for the Legislature to amend
in one act the two sections, one of which affected the salaries
of the members of the State Board of Equalization, and the
other one which affected those of other appointive state of-
ficers? Are the two so clearly incongruous or inconsistent as
to make the subject plural within the purview of the con-
stitutional provision? We think not.

But it is insisted that the subject of the amendatory act
in question was not salaries; that it was, rather, "the State
Board of Equalization and its duties and organization."
It is with regard to this contention that the confusion, if any,
arises. While it is true that section 2583 dealt with the or-
ganization and duties of the State Board of Equalization,
it, however, also dealt with their salaries. Under a title to
amend this section by its number any amendment germane to
any matter in the section was proper, because the matters
therein contained were all correlated. Under another provis-
ion of our Constitution, in order to change, add to, or elimi-
nate a single phrase or word, the whole section as amended
must be re-enacted. If it were intended to amend section
2583 by changing the salaries therein provided for, it would
have been necessary to re-enact the whole section; and this
would likewise be true if any other change were to be effected.
The only material change the Legislature made in section
2583 by the act in question was to increase the salaries of

the members of that board. It is true that an addition was inserted in the amendment which required that board to "inspect and examine annually all property it is required to assess." It requires no argument to demonstrate that all this, while not expressed in the original section before it was amended, was, nevertheless, clearly implied. As a general rule any board or individual is assessing—that is, in valuing property for taxation—acts in a *quasi* judicial capacity. It is presumed, therefore, that the assessor inspects the property to be valued or assessed. The additional words, therefore, requiring inspection added no special duty which was not imposed by implication before.

But there is still another reason why the added words are of but small, if any, importance. These words were directory merely, although mandatory in form, for the reason that if an assessment were made without such inspection it would be as valid as one where the inspection was actually made. Would any one be bold enough to assert that an assessment made by the board without inspection would be void or vulnerable to attack for that reason alone? No such contention could prevail. It seems quite reasonable, therefore, that the subject-matter contained in the amendatory act is not so incongruous nor inconsistent as to prevent it from being incorporated in one amendatory act. This also disposes of the claim of duplicity or plurality of subjects. While it may be conceded that an argument could be presented from a different point of view from which one may reason out a plurality of subjects, yet, as we have pointed out, we are not permitted to indulge such an argument for the purpose of invalidating an act of the Legislature. This is but just and reasonable. Both officers and laymen usually act, and are justified in acting, upon the law as passed by the lawmaking power. We should not, therefore, for slight and unsubstantial causes, declare a law regularly passed invalid. To do this it should be clearly and unmistakably made to appear that the law is contrary to some constitutional requirement. This,

in view of all the circumstances, we cannot say of the law in question.

The judgment is therefore affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.