[Civil No. 2504.  Filed February 27, 1926.]

[244 Pac. 376.]

In the Matter of the Application of BERT H. MILLER for Admission to Practice as an Attorney and Counselor at Law in All of the Courts of the State of Arizona.

1. STATUTES—TITLE OF STATUTE REGULATING ADMISSION TO BAR HELD NOT DEFECTIVE AS EMBRACING MORE THAN ONE SUBJECT, OR FOR FAILURE TO INDICATE CONTENTS THEREOF (LAWS 1925, CHAP. 56; CONST., ART. 4, § 13; LAWS 1907, CHAP. 76, § 2; LAWS FIRST STATE LEG. [3D SP. SESS.] CHAP. 24, § 2).—Title of Laws of 1925, chapter 56, "To amend paragraph 263, chapter 1, title 3, Revised Statutes of Arizona, 1913, Civil Code, as amended by chapter 43, Ses-

sion Laws of Arizona, 1919, entitled 'Attorneys at law'; and repealing paragraph 262 of the Revised Statutes of the state of Arizona, 1913, Civil Code, and all acts and parts of acts in conflict herewith," does not violate Constitution, article 4, section 13, requiring act to contain only one subject, which must be expressed in its title, for failure to specifically mention requirement that every applicant for admission to bar must pass examination, nor does fact that it includes those who have practiced in other states and have heretofore been admitted on motion render it defective as embracing more than one subject, especially in view of fact that it is amending act and its title specifically mentions section of statute which it amends, in view of Laws of 1907, chapter 76, section 2, Laws of First State Legislature (3d Sp. Sess.), chapter 24, section 2.

2. STATUTES—TITLE OF STATUTE STATING SUBJECT IN GENERAL TERMS, WITHOUT DISCLOSING DETAILS OF LEGISLATION, IS SUFFICIENT (CONST., ART. 4, § 13).—Constitution, article 4, section 13, does not require that title of statute be index to its contents, but, if title states subject in general terms without disclosing details of legislation, it is sufficient.

3. STATUTES—REQUIREMENT THAT STATUTES RELATE TO ONE SUBJECT SHOULD BE LIBERALLY CONSTRUED (CONST., ART. 4, § 13).—Constitution, article 4, section 13, requiring act to embrace but one subject, which shall be expressed in its title, should be given liberal construction.

4. STATUTES—MATTERS TREATED IN AMENDING ACT MUST BE GERMANE TO SUBJECT EXPRESSED IN TITLE OF ORIGINAL ACT (CONST., ART. 4, § 13). — Though title which simply names or describes amending act as such, without stating specific character or substance of amendment, sufficiently complies with Constitution, article 4, section 13, requiring act to' contain but one subject, which shall be clearly expressed in its title, matters treated in amending act must be germane to subject expressed in title of original act, and such that they could have been properly included in that legislation.

5. STATUTES—STATUTE REGULATING ADMISSION OF ATTORNEYS TO BAR HELD TO COMPLY WITH CONSTITUTIONAL REQUIREMENT THAT ACT OR SECTION AMENDED SHALL BE SET FORTH AND PUBLISHED AT FULL LENGTH (LAWS 1925, CHAP. 56; CONST., ART. 4, § 14).—Laws of 1925, chapter 56, regulating admission of attorneys to bar, complies with Constitution, article 4, section 14, requiring act or section as amended by amending act to be set forth and published at full length.

2. See 25 R. C. L. 842.
3. See 25 R. C. L. 834, 835, 837.
4. See 25 R. C. L. 871.

6. STATUTES—IF WHOLE ACT IS AMENDED, IT MUST BE SET FORTH AND PUBLISHED AS AMENDED, BUT, IF ONE OR MORE SECTIONS ONLY ARE AMENDED, IT IS SUFFICIENT, IF THEY ALONE ARE SET FORTH IN FULL (CONST., ART. 4, § 14).—Under Constitution, article 4, section 14, if whole act is amended, it must be set forth and published as amended; but, if one or more sections only are amended, it is sufficient, if they alone are set forth in full as amended.

7. STATUTES—STATUTE REGULATING ADMISSION OF ATTORNEYS TO BAR HELD NOT LOCAL OR SPECIAL ACT REGULATING PRACTICE OF COURTS (LAWS 1925, CHAP. 56; CONST., ART. 4, § 19, SUBD. 5).—Laws of 1925, chapter 56, regulating admission of attorneys to bar, is not local or special act regulating practice of courts of justice contrary to Constitution, article 4, section 19, subdivision 5.

8. ATTORNEY AND CLIENT—AS GENERAL RULE LEGISLATIVE QUALIFICATIONS FOR ADMISSION TO BAR DOES NOT PREVENT COURTS FROM PRESCRIBING OTHER QUALIFICATIONS.—As general rule, though there is no constitutional warrant, legislature may in general way prescribe necessary qualifications for admission to bar, but such power of legislature does not prevent courts from prescribing such other qualifications as may seem necessary to protect them and public at large from persons of immoral character.

9. CONSTITUTIONAL LAW—WISDOM OF POLICY IN REQUIRING THOSE WHO HAVE PRACTICED LAW IN OTHER STATES TO PASS EXAMINATION TO BE ADMITTED TO BAR IS NOT MATTER FOR COURTS, BUT FOR LEGISLATURE (LAWS 1925, CHAP. 56).—Wisdom of policy of Laws of 1925, chapter 56, of requiring those who have practiced law in other states for considerable time to pass examination before being admitted to bar is not matter for court to decide, but is matter for legislature.

10. ATTORNEY AND CLIENT—LEGISLATURE HAS RIGHT TO SPECIFY QUALIFICATIONS FOR ADMISSION TO BAR.—Under its police power, legislature has right to say what qualifications citizens must possess to be permitted to practice law.

---

See (1) 36 **Cyc.**, p. 1018, n. 79; p. 1019, n. 83; p. 1022, n. 99 New, 1; p. 1029, n. 25; p. 1031, n. 31.   (2) 36 **Cyc.**, p. 1019, n. 83; p. 1028, n. 24.   (3) 36 **Cyc.**, p. 1018, n. 79; p. 1031, n. 31.   (4) 36 **Cyc.**, p. 1030, n. 30; p. 1031, n. 31, 32; p. 1058, n. 66.   (5) 36 **Cyc.**, p. 1060, n. 76.   (6) 36 **Cyc.**, p. 1060, n. 76; p. 1061, n. 77; p. 1062, n. 78.   (7) 36 **Cyc.**, p. 1012, n. 58.   (8) 6 **C. J.**, p. 569, n. 31; p. 572, n. 63, 64.   (9, 10) 6 **C. J.**, p. 569, n. 31; p. 572, n. 63; 12 **C. J.**, p. 887, n. 38.

8. Power of legislature to prescribe qualifications of attorneys, see note in 10 L. R. A. (N. S.) 289.

Original proceeding. Motion of applicant denied.

Mr. C. H. Young and Mr. W. A. Ricks for Applicant.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

McALISTER, C. J.—This is an original proceeding in which Bert H. Miller seeks to be admitted to practice as an attorney and counselor at law in the courts of this state. His admission has been moved by a member of the Arizona bar, C. H. Young, and in support of this motion the following credentials are presented: First, a certificate of the clerk of the Supreme Court of the state of Idaho showing that he is a member of the bar of that state in good standing, and has been in the active practice in that court for more than ten years last past; second, a letter signed by the five members of the Supreme Court of the state of Idaho recommending him for admission to the bar of this state; third, the affidavit of Mr. Miller, the applicant, showing that he is forty-eight years of age, a citizen of the United States and Arizona, that he was admitted to the practice of the law in the state of Idaho more than ten years ago and since that time has been continuously and actively engaged in such practice in that state, that he has never been charged with any criminal offense and is in good standing in that court; fourth, the affidavit of J. D. Kilpatrick of Phoenix, Arizona, showing that he has been personally and well acquainted with Bert H. Miller for more than fifteen years last past, and that to his knowledge said Bert H. Miller has been continuously and actively engaged in the practice of the law for more than fifteen years last past, and that he

is a man of good moral character, of honesty and integrity.

There is no question but that this showing would entitle Mr. Miller to admission under the law as it stood prior to the enactment of chapter 56, Session Laws of Arizona 1925, but with the passage of this act admission upon motion, regardless of the character of the credentials presented, seems to be prohibited; at least, we understand such is the construction placed upon the act by the board of bar examiners, and the application in this case is made upon this theory. The applicant contends, however, that this chapter is unconstitutional and void and, therefore, that his right to admission rests wholly upon the law as it stood previous to its passage. The validity of the act is attacked upon several grounds. The first is that its title does not conform to the requirements of article 4, section 13, of the Constitution of this state, which reads as follows:

"Section 13. Every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

Both the title and the act are short and are in this language:

"Chapter 56
"(Substitute Senate Bill No. 34)
"An act to amend paragraph 263, chapter 1, title 3, Revised Statutes of Arizona, 1913, Civil Code, as amended by chapter 43, Session Laws of Arizona, 1919, entitled 'Attorneys at Law'; and repealing paragraph 262 of the Revised Statutes of the state of Arizona, 1913, Civil Code, and all acts and parts of acts in conflict herewith.

"Be it enacted by the Legislature of the state of Arizona:

"Section 1. That paragraph 263, chapter 1, title 3, Revised Statutes of Arizona, 1913, Civil Code, as amended by chapter 43, Session Laws of Arizona, 1919, be and the same are hereby amended to read as follows:

"263. Every person who shall be of full age, a resident of this state and a citizen of the United States, and of good moral character, may be admitted to practice as an attorney and counselor at law in all of the courts of this state, but the applicant shall first produce a certificate from the board of examiners, that he possesses sufficient learning in the law, and is of good moral character, and is possessed of sufficient ability to enable him to properly practice as an attorney and counselor at law in the courts of this state. Before any person, who has been admitted to practice in any other state or territory of the United States, or the District of Columbia, may be allowed to take the examination of the board of examiners, he shall produce satisfactory evidence by certificate or affidavits that he is still in good standing in each state or territory in which he has practiced, and by certificate from the bar association, if any there be in such states, territories or District of Columbia, that he is an attorney in good standing. No person shall be entitled to practice as an attorney and counselor at law in any of the courts of this state until he shall be licensed so to do by the Supreme Court of the state. The clerk of said Supreme Court shall be entitled to receive from each person admitted, for the issuance of any such license certifying that said person is entitled to practice his profession in all of the courts of this state, the sum of ten dollars; provided that an attorney practicing in another state, territory or in the District of Columbia, may be permitted on motion to be associated with local counsel in the trial of any particular action in courts of this state, and only for the purpose of such case.

"Section 2. That paragraph 262, Revised Statutes of Arizona, 1913, Civil Code, and all other acts and parts of acts in conflict with this act, be and the same are hereby repealed.

"Approved March 12, 1925."

The contention is that the title fails to state briefly or even mention any of the matters with which the act itself deals, and that it therefore violates said section 13, article 4. It is argued that this is true because no one can read the title and gain therefrom the information, or even an intimation, that in order to be admitted to practice law in this state an applicant shall be of full age, a resident of the state, and a citizen of the United States; that he must procure a certificate from the board of bar examiners showing that he possesses sufficient learning in the law, is of good moral character, and has sufficient ability to enable him to properly practice law in the courts of this state, and that everyone, regardless of the number of years he may have practiced in some other state or territory, must take an examination before a board of bar examiners.

The title discloses that the purpose of the act is to amend paragraph 263, Revised Statutes of Arizona of 1913, as amended by chapter 43, Session Laws of 1919, entitled "Attorneys at Law," and to repeal paragraph 262 of the same Code. As incorporated in the Revised Statutes of 1913, this paragraph provided that "every other person" applying for admission to practice in Arizona (the preceding paragraph [262] having authorized the admission upon motion of attorneys who had been in the active practice in another state for the three years last past) should produce a certificate from the board of examiners that he possesses sufficient learning in the law and ability to practice as an attorney in this state before he could be admitted. But in 1919, in an act entitled "An act to amend paragraph 263, chapter 1, title 3, Revised Statutes of Arizona, 1913, Civil Code, entitled 'Attorneys at Law'" (chapter 43, Session Laws of that year), the legislature amended this paragraph by adding to it a provision excepting from

its terms two classes of persons whose admission upon motion is permitted, namely, graduates in the law course of the University of Arizona and attorneys who, with certain other qualifications, had been admitted to practice in a court of record of another state for ten years. The seventh legislature, however, came to the conclusion that every applicant, including the two classes just mentioned, should be required to pass an examination before being admitted, and to give effect to this policy it enacted chapter 56, Session Laws of 1925, in which it amended paragraph 263, as it stood after the amendment of 1919, by eliminating the provision enacted that year permitting the admission upon motion of University graduates and those who had been admitted to practice for ten years and inserting in its stead one requiring every applicant, regardless of the number of years he had practiced, to pass an examination, and then specifically repealed paragraph 262.

It is clear, therefore, that paragraph 263 and both acts amendatory thereof concern the one subject "attorneys at law," and the qualifications they must possess as a prerequisite to their admission to practice in this state. The title of chapter 56, which, it is claimed, does not embrace the contents of the body of the act itself, does not, it is true, contain detailed information relative thereto, but no one can read it without being advised that the act deals with the general subject "attorneys at law," and when this term as a subject of legislation is spoken of those aspects of the question legislative bodies ordinarily concern themselves with, namely, the admission and disbarment of attorneys, naturally come to mind. The fact that it fails to mention, even briefly, the various phases of the subject treated in the act is immaterial if these matters are germane to or properly

connected with the general subject, and nothing, it seems to us, could be more properly placed within this designation than the things therein enumerated, to wit, the qualifications an attorney must possess to entitle him to be admitted to practice his profession in this state. These are mere "matters" within the meaning of this word as used in the constitutional provision, and are therefore incidental and secondary in importance to the term "attorneys at law," which is the "subject" and consequently chief thing toward which the legislation is directed (25 R. C. L. 843), and since the act deals with the former only, nothing incongruous or foreign to the latter being included therein, there exists no necessity for any specific mention of them in the title. The provision against which the attack is chiefly aimed, that requiring every applicant to pass an examination, is just as much a "matter" as any other qualification prescribed and as properly connected with the general subject of "attorneys at law" as any other of them, and the fact that it includes those who have practiced in other states and have heretofore been admitted upon motion does not make it any less so or render it vulnerable to an attack upon the ground that it embraces more than one subject.

The one subject requirement of the Constitution does not render it necessary that the title be an index to the contents of the act (*Wheelon* v. *South Dakota Land Settlement Board*, 43 S. D. 551, 14 A. L. R. 1145, 181 N. W. 359; 25 R. C. L. 853, and cases cited in note 17), but is satisfied if it states the subject in general terms without disclosing the details of the legislation. *Crookston* v. *Board of County Commrs.*, 79 Minn. 283, 79 Am. St. Rep. 453, and note on page 464, 82 N. W. 586; *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Montgomery*, 152 Ind. 1, 71 Am. St. Rep. 301, 69 L. R. A. 875, 49 N. E. 582. As said by this court in

*Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837:

"This provision of the Constitution does not require that the title of an act should minutely and in great detail describe the legislation proposed; it is not necessary that the title be a synopsis or a complete index to the legislation. The title of the act, however, should be sufficiently full and comprehensive as to indicate, in a general way at least, what is to follow in the way of legislation. It should not be so meager as to mislead or tend to avert inquiry into the contents thereof."

See *Van Dyke et al.* v. *Geary et al.,* 244 U. S. 39, 61 L. Ed. 973, 37 Sup. Ct. Rep. 483.

The following language from 25 R. C. L. 842, is appropriate:

"The term 'subject' as used in these provisions is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of the act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. This constitutional provision does not contain any limitation on the comprehensiveness of the subject, which may be as comprehensive as the Legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject and not several. It may include innumerable minor subjects, provided that all the minor subjects, when combined, form only one general subject or topic."

In addition to the fact that the provisions of the act are as closely connected with the subject expressed in the title as they could well be, there can be no question but that they are such that no one,

either a member of the legislature or anyone else, could, by reading the title, be surprised or misled as to the contents of the act, and when this requirement has been met the very purpose of the constitutional provision has been accomplished. Its adoption was brought about by the legislative practice of including in the same bill wholly unrelated provisions, of enacting laws under false and misleading title, and of incorporating in meritorious bills provisions not deserving of general favor and which, standing alone, could not command the necessary support to pass them. These practices became so common and led to such evil results that to stop them the people in nearly all the states have inserted in their fundamental law a provision requiring that an act embrace but one subject and matters germane thereto and that its subject be expressed in the title. 25 R. C. L. 834, 835. Such a wise and wholesome purpose should be given effect and this is best accomplished by placing upon the one subject provision a liberal construction which this court said in *Board of Control* v. *Buckstegge, supra,* is given it by all the courts.

If, however, any doubt existed as to the sufficiency of the title of chapter 56 to express the subject or theme treated in the body of the act, it should be borne in mind that this chapter is not the original legislation on attorneys at law, but merely amendatory of that already in force. The fact that its title refers to it as an amending act and designates specifically the section and act amendatory thereof which it amends brings it within the general rule that—

"A title which simply names or describes an amending act as such, without stating the specific character or substance of the amendment, is sufficient." *McGuire* v. *Chicago, B. & Q. Ry. Co.,* 131 Iowa, 340, 33 L. R. A. (N. S.) 706, 108 N. W. 902.

The matters treated in the amending act, however, must be germane to the subject expressed in the title of the original act and such that they could have been properly included in that legislation. *State* v. *Hall,* 27 Wyo. 224, 194 Pac. 476; *In re Howe,* 26 Or. 181, 37 Pac. 536; *State* v. *Jones,* 9 Idaho, 693, 75 Pac. 819; *Montgomery* v. *State,* 107 Ala. 372, 18 South. 157, *Ross* v. *Aguirre,* 191 U. S. 60, 48 L. Ed. 94, 24 Sup. Ct. Rep. 22; *Edler* v. *Edwards,* 34 Utah, 13, 95 Pac. 367; *Commonwealth* v. *Brown,* 91 Va. 762, 28 L. R. A. 110, 21 S. E. 357; *Roby* v. *Sheppard,* 42 W. Va. 286, 26 S. E. 278; 36 Cyc. 1029, 1030, 1058; 25 R. C. L. 871; 1 Lewis' Sutherland on Statutory Construction, 2d ed., par. 141.

An investigation discloses that paragraph 263 was originally enacted as section 2, chapter 76, Laws of 1907, territory of Arizona, under the title "An act to regulate admission to the practice of law," and that it was re-enacted as section 2 of chapter 24 of the Acts of the First State Legislature (Third Special Session) under the title "An act to regulate the admission to practice of attorneys at law and the disbarment of attorneys and defining the rights, duties and privileges of attorneys at law," and carried forward into the Civil Code of 1913 as paragraph 263, where it appears in title 3 thereof which is devoted solely to "attorneys at law." Hence there can be no question but that the requirement in chapter 56, that an attorney from another state must pass an examination in order to be admitted in this state, is germane to the subject expressed in the title of either chapter 76 or chapter 24 and could have been properly included in the legislation thereunder.

The second ground of attack is that chapter 56 violates the provisions of section 14, article 4, of the Constitution, which reads as follows:

29 Ariz.— 38

"No act or section thereof shall be revised or amended by mere reference to the title of such act, but the act or section as amended shall be set forth and published at full length."

It is not apparent in what way chapter 56 fails to comply with this provision, for it is clear that it does not attempt to amend previous acts of legislation upon the subject of "attorneys at law" by a reference to the titles thereto, but complies fully with the requirement that the section as amended shall be set forth and published in full. All this provision means is that if the whole act is amended it shall be set forth and published as amended; but, if one or more sections only are amended, they alone shall be set forth in full as amended. 36 Cyc. 1061. The mischief aimed at by its adoption was the common practice, still followed by the Congress of the United States, of amending the statutes by simply directing the insertion, omission, or substitution of certain words without setting out in full the act as it was intended it should be after amendment. "In the absence of a constitutional provision of this character," says the court in *Fletcher* v. *Prather*, 102 Cal. 413, 36 Pac. 658, "a section of an act might be and often was, amended in one or more of four ways: First, by striking out certain words; second, by striking out certain words and inserting others; third, by inserting certain words; and, fourth, by adding other provisions." If any one of these methods was followed, no one could possibly know by reading the act itself what the law was, but before a legislator could vote understandingly upon such an amendment, or one called upon to construe the law after its adoption could do so intelligently, it would be necessary for him to ascertain how the original act with all previous amendments, if any, read. This placed an unnecessary burden upon both and the

purpose of this provision was to prevent legislation in any such manner. 25 R. C. L. 872, 873; *Montgomery* v. *State,* 107 Ala. 372, 18 South. 157.

The third ground of attack upon the constitutionality of chapter 56 is that it violates article 4, section 19, subdivision 5, of the fundamental law of this state, which reads as follows:

"No local or special laws shall be enacted in any of the following cases, that is to say: . . .

"5. Regulating the practice of courts of justice."

This section enumerates twenty instances in which no local or special law shall be enacted, and the fifth, it will be observed, concerns the regulation of the practice of courts of justice. The applicant contends that this section "negatively denies" the legislature the power to enact laws on this subject and, therefore, that any legislation relating thereto is wholly invalid. The fact, however, that it prohibits the passage of local or special laws on the subject does not mean that general laws thereon may not be enacted, but rather recognizes that they may. In fact the application of the rule "the expression of one thing is the exclusion of another" leads to the conclusion that the framers of the Constitution intended by this section that the legislature should confine legislation on this question to general laws; for instance, conceding applicant's claim that practice as here used includes prescribing the qualifications of attorneys, it was evidently their purpose to provide that a special act admitting John Jones to the practice of the law could not be passed, but that a general one under which he or anyone else who could bring himself within its terms might be admitted could be. No one would question the correctness of this proposition as applied to the other nineteen instances in which the passage of local or special laws is forbidden; for

example, subdivision 1 denies this right regarding the matter of granting divorces and No. 2 in reference to locating or changing county seats, yet no one would contend that, though the legislature could not by special act divorce Mr. and Mrs. John Doe or change the county seat from one place to another, it could not pass a general law on these subjects under which both of these things could be done. It follows, therefore, that this section of the Constitution is authority for the validity of chapter 56 rather than against it.

This view renders unnecessary a discussion of the further contention that this court has the undoubted and exclusive right to say who shall and who shall not practice before it, and hence that any legislation prescribing the qualifications of attorneys is unconstitutional and void. This contention is based upon the ground that the Supreme Court is a constitutional body and has certain functions to perform with which neither the legislative nor the executive department can interfere. It is true that any legislation having such an effect would be invalid, for while the power of the legislature is broad and extensive, in fact, covers the whole field of legitimate legislation, yet it is not sufficiently so to empower it to enact laws that would make it impossible, or even unreasonably difficult, for a separate and distinct department of the government to perform its constitutional functions. If it could be said that chapter 56 hampers the courts in the discharge of these duties, it could be successfully contended that it contravenes the fundamental law, but it is not claimed that it has this effect and could not be, since the natural result of raising the qualifications for admission should be to increase the efficiency of the profession.

It is generally recognized by the courts, even in jurisdictions in which there is no constitutional war-

rant similar to that found in section 19, that the legislature may in a general way prescribe the necessary qualifications which an applicant must have in order to be admitted to the bar, but this does not prevent the courts from prescribing such other qualifications as may seem necessary to them to protect them and the public at large from persons of immoral character. *Re Applicants for License to Practice Law,* 143 N. C. 1, 10 Ann. Cas. 187, 10 L. R. A. (N. S.) 288, and note on page 289, 55 S. E. 635. There is, of course, no question in this instance of the applicant's moral character, because it appears from the credentials presented that it is of the very highest.

Whether it is a wise policy to require those who have practiced for years in other states to pass an examination before being admitted is not a matter for the courts to decide, but one which the legislature alone must determine. We are of the opinion that under its police power the legislature has the right to say what qualifications a citizen must possess in order to be permitted to practice law the same as it may determine the requirements for practicing medicine, dentistry, pharmacy or any other profession, vocation or calling. The right to engage in any of these is not a natural right, but a privilege.

The motion that the applicant be admitted is therefore denied.

ROSS and LOCKWOOD, JJ., concur.