[Criminal No. 631. Filed March 7, 1927.]

[254 Pac. 225.]

# WILL HANCOCK, Appellant, v. STATE, Respondent.

Messrs. Dougherty & Dougherty, for Appellant.

Mr. John W. Murphy, Attorney General, for the State.

LOCKWOOD, J.—A complaint was filed on the twenty-first day of January, 1925, in the justice court of precinct one of Pinal county, Arizona, charging Will Hancock, hereinafter called appellant, and Entonio Pino jointly with a violation of section 641, Penal Code of 1913, as amended by chapter 29, Session Laws of the Sixth Legislature. The case was

tried in the justice court, and the matter dismissed as to Pino, but appellant was convicted, and a fine assessed against him. He appealed to the superior court of Pinal county, and was tried *de novo* there in accordance with the statute. The jury found him guilty, and he was fined $150, with the alternative of imprisonment. The usual motions for new trial and in arrest of judgment were made and overruled, and an appeal was taken to this court.

There are some twenty assignments of error, raising various questions of law, but the state objects to our considering anything except the alleged unconstitutionality of the statute under which appellant was convicted, claiming that in cases of this nature we are limited to that issue, and that only. We therefore will examine this contention first.

The right of appeal in criminal cases is unknown in common law, and, if it exists at all, it is by virtue of some constitutional or statutory provision. 17 C. J. 13. Even when granted by the Constitution, it is subject to reasonable statutory regulations, and is infringed only when the conditions imposed are such as to amount to a denial of justice. *Wainright* v. *State,* 11 Okl. Cr. 547, 149 Pac. 914; *State* v. *White,* 40 Wash. 428, 82 Pac. 743.

It is of course true that, if there is no limitation express or implied in the constitutional or statutory provisions granting an appeal, the appellate court takes jurisdiction of the case for all purposes. It is the contention of the state, however, that under the language of our Constitution and statute there is an implied limitation of the issues we can consider in cases of this nature. Section 4 of article 6 of the Constitution of Arizona reads in part as follows:

"Section 4. The Supreme Court shall have original jurisdiction in *habeas corpus,* and *quo warranto* and *mandamus* as to all state officers. It shall have appellate jurisdiction in all actions and proceedings,

but its appellate jurisdiction shall not extend to civil actions at law for recovery of money or personal property where the original amount in controversy, or the value of the property, does not exceed the sum of two hundred dollars, unless the action involves the validity of a tax, impost, assessment, toll, municipal fine, or statute. . . . "

This provision was copied almost *verbatim* from a section of the Constitution of the state of Washington, which was considered by the Supreme Court of that state in the case of *Henry* v. *Thurston County*, 31 Wash. 638, 72 Pac. 488.

Therein the court said as follows:

"The first important question, therefore, is, how much of the cause is before this court for review? The appellant insists that inasmuch as the court has jurisdiction of the action for one purpose, it has it for all purposes, and will inquire not only into the validity of the statute assailed, but into the other errors assigned upon the appeal, whether or not they are involved with the question which gives it jurisdiction, and regardless of its conclusion on that question. On the other hand, the respondent contends that the court has jurisdiction only so far as the validity of the statute and that part of the judgment of the trial court necessarily dependent thereon is concerned, and that, if the court finds the statute constitutional, its inquiry is ended, while, if it finds the statute unconstitutional, it will modify the judgment of the lower court only in so far as it finds that the unconstitutionality of the statute affects the judgment. . . . Plainly, it was the purpose of the framers of the Constitution to make the superior courts the final arbiters on all questions when the amount in controversy does not exceed two hundred dollars, unless those questions are dependent on the legality of a tax, etc., or the validity of a statute. Any other construction would practically nullify the limitation. If a party may in cases under the jurisdictional amount have all the questions involved reviewed by alleging that some one of them depends on the validity of a statute or the legality of some of the es-

pecially enumerated causes, there are but few cases that this court is not entitled to review, as they can be brought here by merely assailing a statute supposed to be involved. This, we repeat, is not the meaning of the Constitution. It intended that questions not involving or dependent on the validity of a statute, or the legality of a tax, impost, assessment, toll, or municipal fine, should be finally adjudicated in the superior courts, unless the amount in controversy exceeded two hundred dollars.''

The decision was followed in the case of *Gies* v. *Broad,* 41 Wash. 448, 83 Pac. 1025, and has been quoted approvingly in several other cases since.

This court, in the case of *Boehringer* v. *Yuma County,* 15 Ariz. 546, 140 Pac. 507, said:

''Where jurisdiction is given in actions involving the validity of a statute, the courts differ in the extent of the exercise of such jurisdiction. The Texas Supreme Court says: 'It is the case, not merely the question as to the statute, over which the jurisdiction is extended by the language. The existence of the question is the reason why the jurisdiction is given, but it is the case that is brought within it. It follows that, having decided the question of the validity of the statute, we must proceed to dispose of the case by the proper judgment and, in order to do that, must decide the questions of law on which the character of the judgment must depend.' *Texas & P. Ry. Co.* v. *Webb,* 102 Tex. 210, 114 S. W. 1171. The Supreme Court of Washington holds that, where it has jurisdiction solely because the validity of a statute is involved, the exercise of that jurisdiction is limited to a review of the judgment appealed from only in case the statute is invalid, and then only to the extent that it is affected by the invalid statute. If the statute is valid, the inquiry is ended; if invalid, the judgment falls because founded on the invalid statute. *Gies* v. *Broad,* 41 Wash. 448, 83 Pac. 1025.

''Perhaps the greater number of courts take the view announced by the Supreme Court of Washington.''

In *Skaggs* v. *State,* 24 Ariz. 191, 207 Pac. 877, we stated:

"Our jurisdiction to consider this case on appeal must be based upon the authority of some statutory provision. . . . No right of appeal is conferred by the provisions of chapter 1, title 11, part 2 of the Penal Code (sections 1151 to 1163, inclusive), because under the express terms of the Bastardy Law [sections 369–381] prosecution thereunder proceeds upon the complaint originally filed by the woman complainant in the justice court, . . . and the Code . . . provides for an appeal only in criminal cases prosecuted by indictment or information."

Appellant urges on us the rule followed in the federal courts, and Texas, Indiana, Kentucky, Colorado and Kansas, which may be summed up in the language of the Supreme Court of Texas, quoted by us in the Boehringer case, *supra,* and also calls to our attention the fact that in the case of *Brown* v. *State,* 25 Ariz. 462, 218 Pac. 993, which was a prosecution under the same section 641, *supra,* as then amended, that we considered a demurrer interposed therein, and reversed the case on that ground, after having held on the same day in *Hazas* v. *State,* 25 Ariz. 453, 219 Pac. 229, that the act under which the prosecution was brought was constitutional. Appellant admits that the question involved in this discussion was not raised in the Brown case, but argues that the court by passing on the demurrer impliedly decided it adversely to the contention of the state herein. The matter, however, has never been directly determined by us.

After careful deliberation, we are of the opinion that on reason and authority the decisions from the state of Washington are the most persuasive. Our constitutional provision was taken from that state, while the statutes of the states supporting appellant's contention, though covering the same subject to some

extent, are decidedly dissimilar in language. When an appeal is expressly forbidden in certain classes of cases, unless "the action involves the validity of a tax, impost, assessment, toll, municipal fine, or statute," reason would indicate the only issues to be determined were those which alone took the cases out of the general rule.

It may be contended this constitutional provision covers civil cases only, and the rule is different in criminal matters. Sections 6 and 23 of article 6 of the Constitution read in part as follows:

"Section 6. The superior court . . . shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law."

"Section 23. Until otherwise provided, superior courts have the same appellate jurisdiction in cases arising in·courts of justices of the peace as district courts now have under said laws."

At the time of the adoption of the Constitution, appeals in criminal cases from justice courts were governed by section 1040, Penal Code of 1901, which reads as follows:

"1040. The defendant may appeal:

"1. To a district court of the county from the final judgment of a justice of the peace, police or recorder's court.

"2. To the Supreme Court from a final judgment of the district court *in all cases when judgment is rendered in an action originally commenced in the district court.*" (Italics ours.)

Under it no criminal case of any nature begun in the justice court could reach the Supreme Court. Section 1156, Penal Code of 1913, which reads as follows:

"1156. An appeal may be taken by the defendant from a final judgment of the superior court in a case appealed from a justice, police or recorder's court

if the action involves the validity of a tax, impost, assessment, toll, municipal fine, or statute. Except as provided in this section there shall be no appeal from the judgment of the superior court rendered in a case appealed from a justice, police or recorder's court,"

—superseded section 1040, *supra,* and provides the only method of taking criminal cases arising in the justice court into the Supreme Court. Appellant must rely on it to sustain his right to appear in this court, and if, as suggested by him, section 1156, *supra,* is unconstitutional as limiting the right of appeal in criminal cases, he has no right or method of appeal available at all. The limiting language therein is *verbatim* that of section 4, article 6, above quoted, and in reason should receive the same interpretation. We therefore hold that in appeals which are brought under the provisions of section 1156, *supra,* this court will consider only the validity of the tax, impost, assessment, toll, municipal fine or statute involved; and, if the same be determined to be valid, the judgment will be affirmed, but, if not, it will be reversed only in so far as such invalidity may affect it.

Such being the case, we have for consideration only the constitutional questions involved in this appeal. Section 641, *supra,* as originally passed, reads as follows:

"Sheep or goats being moved across cattle ranges shall travel at least three miles each day."

This was part of title 17 of the Penal Code of 1913, entitled "Offenses against stock raisers," and was carried over into the code from the Session Laws of 1905 (chapter 62, § 3). The legislature in 1921 passed chapter 39, Session Laws, of that year, entitled:

"An act to amend paragraphs 639, 640, 641, of title 17 (pertaining to 'Offenses against stock

raisers'), Revised Statutes of Arizona 1913, Penal Code.''

Section 641 as then amended reads as follows:

"641. Any person owning or having charge of sheep or goats who herds, grazes or pastures the same or permits or suffers the same to be herded, grazed or pastured on any cattle range previously occupied by cattle or upon any range usually occupied by any cattle grower either as a spring, summer or winter range for his cattle, is guilty of a misdemeanor; but the priority of right between cattle and sheep owners to any range is determined by priority in the usual and customary use of such range either as a cattle or sheep range.

"Sheep and goats, when being moved from their accustomed range to a shipping point to be shipped or to lambing grounds for lambing purposes or when being returned from a shipping point where they were unloaded from cars or being returned to their accustomed range from said lambing grounds where they were located during lambing time, shall, when off a designated stock driveway and crossing a range which is being and has been used as a cattle range, travel at least three miles per day. That in moving from their accustomed range to said shipping point or lambing grounds or from such lambing grounds or unloading point to their accustomed range, they shall travel by the most direct practicable route to one of the Arizona stock driveways designated by the United States government or to any other stock driveway hereafter fixed and determined and shall thence travel over and on such driveway and not depart therefrom until they reach a point nearest to their said shipping point or their usual lambing grounds and travel thence from said point by the nearest practicable route to said shipping point or lambing grounds, traveling at the rate of not less than three miles per day while crossing a cattle range and shall pursue the same course, traveling at the same rate, when going from said lambing point or unloading place back to their accustomed range. Provided, however, that when they are upon one of the aforesaid designated trails or upon any trail hereafter established, they shall travel at such rate

as they may deem proper; and provided further, that nothing in the provisions of this paragraph shall be construed to give the right for any such sheep or goats to travel over, be herded on or graze upon the lands or possessory rights to lands of another."

In 1923 the legislature passed chapter 29, Session Laws, of that year, the title of which reads as follows:

"An act to amend section 641 of title 17 (pertaining to 'Offenses against stock raisers'), Revised Statutes of Arizona, 1913, Penal Code, as amended by chapter 39, Session Laws of Arizona, 1921, and exempting from the act any cattle range converted by purchaser or owner into sheep range."

The change made by chapter 29, *supra,* consisted in adding to the first paragraph of the section, as amended by chapter 39 as above quoted, the following words:

"Providing that nothing herein contained shall be construed as prohibiting the herding or grazing of sheep over or upon any mixed range, and

"Provided further that any person, firm, or corporation who may have heretofore purchased or may hereafter purchase any entire cattle range or lands or right to possession or use thereof, theretofore used as a cattle range or cattle grazing ground, or the grantees or assigns of any such person, firm or corporation, may thereafter use the same as lambing grounds or grazing grounds for sheep, subject otherwise to the provisions of this act."

The first alleged ground of constitutionality is that the act embraces more than one subject, and some of those subjects are not expressed in its title, contrary to section 13, part 2, article 4, of the Constitution. So far as section 641, *supra,* as it appears in the 1913 Code, is concerned, this point cannot be raised against it. *Bocchi* v. *State,* 25 Ariz. 37, 212 Pac. 463.

The purpose of the above-mentioned section of the Constitution is that no law shall be amended unless

its title gives notice of the general subject dealt with by the act. Similar provisions are found in many state Constitutions, and were generally adopted to meet what was at one time a very common and pernicious legislative practice. A voluminous act would be introduced and given an appropriate title, and then somewhere in the body of the act would be hidden a clause dealing with a subject entirely foreign to that expressed in the title. The average legislator, being only human, would examine the title, and, seeing it dealt with a subject apparently laudable, or, at the worst, innocuous in its nature, would pay but little attention to the exact language of the act itself, and thus might vote for a bill in utter ignorance of its true provisions. If this was true of the members of the legislature, still more was it so in the case of the private individuals who might be greatly interested in the hidden "joker" in the bill. Provisions of this kind have been before the courts many times. The Supreme Court of the United States, in *Van Dyke* v. *Geary,* 244 U. S. 39, 61 L. Ed. 973, 37 Sup. Ct. Rep. 483 (see, also, Rose's U. S. Notes), said, referring to this clause of our Constitution:

"Constitutional provisions requiring the subject of legislative acts to be embraced in the title are not to be given a strained and narrow construction for the purpose of nullifying legislation."

And the Supreme Court of Tennessee, reasoning on a question of the same general nature, in *Wilson* v. *State,* 143 Tenn. 55, 224 S. W. 168, said:

"It is not essential to the constitutionality of a statute that its title epitomize or recite in detail the provisions contained in its body [citing cases]. The general purpose of the provisions of section 17 of article 2 of the Constitution is accomplished when the law has but one general purpose, which is fairly indicated by its title. It will not be required that every end and means necessary or convenient for the ac-

complishment of this general object be provided for by a separate act relating to that alone. Such a requirement would not only be unreasonable, but would render legislation impossible. . . . It therefore may be stated that the true rule of construction, which has been fully established by the authorities, is that any provision of the act, directly or indirectly relating to the subject expressed in the title, and having a natural connection therewith, and not foreign thereto, should be held to be embraced in it."

We have approved and applied the rule above set up in *Black & White Taxicab Co.* v. *Standard Oil Co.,* 25 Ariz. 381, 218 Pac. 139.

The particular act whose constitutionality is questioned on this ground is not original, but an amendatory statute. Laws of this nature are within the constitutional provision when they refer to the section which they amend by chapter and section number only. 36 Cyc. 1030. The amendment, however, must be germane to the subject of the section amended. *Wall* v. *Garrison,* 11 Colo. 515, 19 Pac. 469; *Chippewa County* v. *Auditor-General,* 65 Mich. 408, 32 N. W. 651; *Trumble* v. *Trumble,* 37 Neb. 340, 55 N. W. 869; *State* v. *Washoe County,* 22 Nev. 399, 41 Pac. 145.

What, then, was the general subject covered by section 641, as it stood in 1913? We are of the opinion that it was the regulation of the grazing of sheep and goats upon cattle ranges. The particular limitation in the original section, of course, refers only to the movement of the stock, but it is obvious that it was for the purpose of regulating the grazing. If such be the general subject of the original section, there is no doubt that the amendatory statutes are clearly germane thereto, and the title was sufficient under the constitutional provision.

The second objection is that the act violates section 1, article 14, of the federal Constitution. This proposition has already been determined adversely

to appellant's contention in *Hazas* v. *State, supra,* and we need not discuss the matter further.

The third objection is that the statute is in conflict with section 4, article 20, of the Constitution of Arizona, in that it attempts to regulate the public lands of the United States of America lying within the boundaries of the state of Arizona. This question has been settled adversely to the contention of appellant in *State* v. *Omaechevviaria,* 27 Idaho 797, 152 Pac. 280, affirmed 246 U. S. 343, 62 L. Ed. 763, 38 Sup. Ct. Rep. 323, and *Hazas* v. *State, supra.*

The last constitutional point raised is that the statute is in conflict with section 2, article 17, of the Constitution of Arizona, in that it denies appellant's existing rights to the use of water within the state. We cannot see where there is any merit to this contention. If there are water rights within any cattle range which appellant or others are entitled to use, we see nothing in the act prohibiting it. The statutory provision is not against watering animals, but against grazing them. It may be true that it would be more convenient in approaching some watering place where appellant has vested rights that he be allowed to graze his sheep, but this is not necessary to the enjoyment of a water right. He might, for instance, transport the sheep to and from the water by means of motor-trucks or wagons, a thing which nowise violates the law. The fact that such a course would be inconvenient or expensive does not affect the validity of the statute.

We have examined every constitutional question raised, and are of the opinion there is no merit in them. Since, as we have held, these are the only issues which we can consider, the judgment of the superior court of Pinal county is affirmed.

ROSS, C. J., and McALISTER, J., concur.