[Criminal No. 770.   Filed March 21, 1932.]

[9 Pac. (2d) 404.]

# PORTER MORRIS, Sr., Appellant, v. STATE, Respondent.

Mr. D. L. Cunningham, for Appellant.

Mr. K. Berry Peterson, Attorney General, Mr. J. R. McDougall, Assistant Attorney General, and Mr. Frank E. Thomas, County Attorney, for the State.

McALISTER, C. J.—This is an appeal by Porter Morris, Sr., from a conviction for slaughtering for sale on October 2, 1931, a yearling steer without having first procured from the Live Stock Sanitary Board of Arizona a license to do so.

There is no dispute as to the facts and the only question involved is whether the act requiring those who slaughter animals for sale to procure a license therefor is valid. Chapter 43, Session Laws of 1931, makes this requirement, and the particular portion of it that gives rise to this action is section 30 which, so far as pertinent, is in this language:

"Section 30. Section 2148, Revised Code, 1928, is hereby amended to read as follows:

"Sec. 2148. *License, Slaughtering without Prohibited:* Penalty. The board may grant an applicant, upon payment of the fees and presentation of proof of good moral character, a license to slaughter neat animals, horses, mules, asses, sheep or goats, as may be set forth in such license. For a license to slaughter not to exceed twenty head of neat animals, horses, mules or asses and not to exceed thirty head of sheep or goats in any one calendar year, the applicant shall pay a license fee of fifteen dollars; for a license to slaughter more than twenty head of neat animals, horses, mules or asses and more than thirty head of sheep or goats in any one calendar year, he shall pay a license fee of eighty dollars. No license shall be issued for a shorter term than from the date of its issuance up to and including the following December thirty-first. For good cause shown, the board may, after a hearing, and after notice to the holder of such license of its intention so to do, revoke any license issued hereunder. It shall be a misdemeanor for any person, other than producers slaughtering under special permit, to slaughter any neat animals,

horses, mules, asses, sheep or goats for sale, or to offer for sale any portion thereof without first procuring a license. Every peddler or retailer of fresh meat of any neat animals, horses, mules, asses, sheep or goats shall before offering such meat for sale, procure a license therefor from the live stock sanitary board, for which he shall pay an annual license fee of ten dollars, and he shall enter in a book kept by him for that purpose the name and address of each person from whom he purchased or obtained such meat, the date of purchase, quantity purchased, time and place of purchase, and upon the request of any inspector or peace officer he shall exhibit the same to such inspector or peace officer. All licenses issued hereunder shall expire on December thirty-first of the calendar year in which issued. Anyone failing to comply with the provisions of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than twenty nor more than one hundred dollars for each offense, or by imprisonment for not less than twenty nor more than one hundred days, or by both such fine and imprisonment.''

This, it will be observed, is an amendment of section 2148, Revised Code of 1928, which, before it was changed, divided the slaughtering business into four classes, the basis of classification being the location of the business, and required all who engaged in it to procure a license, the amount thereof varying according to the size of the town in which, or within four miles of which, it was to be carried on. As it appears in the 1928 Code, section 2148 is, in so far as it relates to the slaughtering of animals for sale, the same in meaning as paragraph 3741, Revised Statutes of 1913 (Civil Code) as amended by chapter 77, Session Laws of 1927, which was invalidated in April, 1929, by the decision of this court in *Gila Meat Co.* v. *State,* 35 Ariz. 194, 276 Pac. 1. The holding in that case was based upon the ground that the classification made by the act was unreasonable and the tenth

legislature, prompted by a desire to enact a slaughtering license law that would overcome this defect, amended paragraph 2148 to read as above stated.

As a basis for the contention that section 30 is invalid, appellant claims, first, that it is an attempt to amend a void law; second, that the subject of the act is not contained within the title; and, third, that it does not operate equally upon all persons similarly situated in that it taxes some persons and exempts others engaged in the same business in violation of section 13, article 2 of the Constitution of Arizona.

Due to the fact that it amends a section of the 1928 Code that had been held unconstitutional, appellant contends, first, that its passage was an attempt to amend something that had no existence and, therefore, that it is ineffective; in other words, that there must exist something upon which to engraft an amendment before this process may take place, and a statute which has been declared null and void is no longer in existence and, hence, incapable of amendment. This view, it is true, finds support in the authorities but the greater weight of authority is that ''an amendatory statute will be upheld, although it purports to amend a statute already amended or which for any reason has been declared invalid.'' 36 Cyc. 1055; *Allison* v. *Corker,* 67 N. J. L. 596, 60 L. R. A. 564, 52 Atl. 362; *City of Beatrice* v. *Masslich,* (C. C. A.) 108 Fed. 743; *Southern Pac. Co.* v. *Bartine,* (C. C. A.) 170 Fed. 725. ''The decided weight of authority and the better opinion,'' says 25 R. C. L. 906, ''is that an amendatory statute is not invalid, though it purport to amend a statute which had previously been amended, or for any reason had been held invalid.''

This contention is without merit for the further reason that section 30 is one of the many sections comprising chapter 43 of the Session Laws of 1931, each of which specifically amends a separate and

distinct section of the Live Stock Law, and a reading of chapter 48 of the Revised Code of 1928, which is devoted wholly to that subject, and of the amendments in chapter 43 of many of its sections, discloses that section 2148 was, and section 30 is, independent and complete in themselves, and that the change in the terms of the former made by the latter affects in no sense the validity of the remaining sections of the livestock law. The phase of that law dealt with in both 2148 and 30 with which we are here concerned is the matter of licenses for slaughtering, and this could have been eliminated from the old law, and could be from the new, without interfering in the slightest degree with the rest of it. The correctness of this statement is fully demonstrated by the fact that following the decision in *Gila Meat Co.* v. *State, supra,* eliminating from the numerous provisions of the Livestock Law the one later numbered 2148, the remaining sections which dealt with other phases of the livestock industry were enforced just as though this section had never been deleted. To such a situation the rule as stated in 36 Cyc. 1056 is applicable. It is: ''A statute purporting to amend a repealed or void statute is valid where the provisions of the new statute are independent and complete in themselves.'' *People* v. *Board of County Canvassers of Jefferson County,* 143 N. Y. 84, 37 N. E. 649; *Attorney General* v. *Stryker,* 141 Mich. 437, 104 N. W. 737; *Reynolds* v. *Topeka Board of Education,* 66 Kan. 672, 72 Pac. 274. There is no question of the right to amend an invalid or unconstitutional provision of a statute by removing the objectionable feature without re-enacting the entire statute, ''if the defective provision is so separable from the rest of the statute as not to render it unconstitutional in its entirety.'' 25 R. C. L. 906.

The next contention is that chapter 43, in so far as it purports to amend section 2148 of the 1928 Code,

is not an amendment at all but in effect a new enactment, and as such does not contain in its title the subject with which it deals, as required by section 13, part 2, article 4 of the Constitution. Whether this chapter, or the particular section of it here involved, be regarded as a new or an amendatory act, the subject it treats is sufficiently disclosed by its title which reads as follows: "An Act to Amend Chapter 48, Revised Code, 1928, Entitled 'Live Stock,' and Acts Amendatory Thereof, Relating to the Live Stock Industry, and to Provide for the Protection Thereof." It contains forty sections each of which, except the last three, amends one of the eighty-five sections of chapter 48 and deals with some phase of the general subject treated therein, namely, livestock. Section 30, as already pointed out, as did section 2148 which it amends, concerns the question of licenses for slaughtering animals for sale, and while this particular phase of the general subject is not mentioned in the title it is plain that it is a matter properly connected therewith and germane thereto. It has been so treated for more than thirty years, for during this entire period the livestock law has contained a provision requiring those who slaughter animals for sale to procure a license therefor. The provision that the subject of the act shall be expressed in the title does not require that a synopsis or detailed recital of the various aspects of the subject with which the act deals shall be mentioned therein but only that the title "be sufficiently full and comprehensive as to indicate, in a general way at least, what is to follow in the way of legislation." *Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837. See *In re Miller,* 29 Ariz. 582, 244 Pac. 376.

The third and principal contention is that section 30 is unconstitutional and void because it grants to certain persons privileges and immunities not granted to others similarly situated and, therefore,

violates subdivision 13, section 19, part 2, article 4 of the Constitution, which reads as follows:

"No local or special laws shall be enacted in any of the following cases, that is to say: . . .

"13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises."

Section 31 of this chapter expressly provides that producers may slaughter neat animals, horses, mules, asses, sheep or goats for food for themselves, their immediate families or employees without a license, and section 27 specifically authorizes producers, upon procuring a special permit from the Live Stock Sanitary Board, to slaughter and retail the meat of not to exceed five head of neat animals or goats in any one calendar year. It will be observed, however, that section 30 provides that those who slaughter not to exceed twenty head of neat animals, horses, mules or asses and not to exceed thirty head of sheep or goats in any one calendar year shall pay a license fee of $15 a year and that those who slaughter more than twenty head of neat animals, horses, mules, or asses and more than thirty head of sheep or goats in any one calendar year shall pay a license fee of $80. This section likewise requires every peddler or retailer of the meat of such animals to pay an annual license fee of $10.

It is clear that sections 27 and 30 authorize three classes of individuals, associations or corporations to slaughter animals for sale upon procuring a permit or license therefor and due to the difference in the fee required of each class appellant contends that section 30 is a special law granting a special privilege or immunity to those who kill (and retail) five animals and pay nothing therefor, as against the second and third classes who pay annually for slaughtering, $15 and $80, respectively, and also to the second class as against the third, since they do

not pay nearly the same per animal. A producer who does not kill or retail in excess of five head of cattle or goats during a calendar year can hardly be said to be in the business at all. If so, it is in such a small way that to permit him to follow it to this extent without paying a license fee therefor, even though it is required of those who engage in the business, does not bring the statute within the prohibition of this constitutional provision.

The further contention is made, however, that to compel those who kill over twenty head of cattle, horses, mules or asses and over thirty head of sheep or goats to pay $80 a year, while requiring those who kill up to twenty and thirty head, respectively, to pay $15, amounts to the granting of a special privilege or immunity to one class as against the other, the favored one depending upon the number of animals slaughtered by the respective classes. For instance, the license of a person paying $15 and slaughtering twenty head is 75¢ per animal while that of one who pays $80 and slaughters twenty-one head is $3.80 per animal but only 20¢ per head if he slaughters as many as four hundred, which his license permits him to do. The second and third classes both slaughter for sale but those who handle only twenty head a year are in the business incidentally and in connection with other lines of endeavor, while those who kill over this number are engaged in it as a business and most, if not all of them, slaughter many times the number those in the second class do. Hence, the requirement that those who slaughter as a business pay a license fee of $80 while those who slaughter only a small number as supplementary to some other occupation pay $15 is a reasonable basis of classification and does not make the act containing it one granting a special privilege or immunity. Neither does the fact that the license fee required of those who slaughter over twenty head is not divided into

classes according to the number slaughtered and a different fee exacted of each class make it a law of this character since it is clear that the purpose of the legislature was to compel all who engage in slaughtering as a business to pay the same fee.

It is suggested by appellant that if the act be considered a revenue and not a regulatory measure it is void for lack of uniformity in the license fees it requires. It is unnecessary, however, to discuss this proposition, for, even though the license fee be treated as a tax and not a police regulation, it is an excise and not a property tax, and under the authorities the rule that all taxes upon the same class of property shall be uniform does not apply. The provision requiring it, section 1, article 9, of the Constitution, refers to a tax on property and not to an excise tax. *Gila Meat Co.* v. *State, supra; Hunt* v. *Callaghan,* 32 Ariz. 235, 257 Pac. 648. A classification of those who engage in the business of slaughtering that is fair and reasonable for excise tax purposes would be equally so if the measure in which it appears be treated as a police regulation but in neither case could the legislature enact a special law granting a special privilege or immunity to any corporation, association or individual, or, as stated in section 13, article 2 of the Constitution, a "law . . . granting to any citizen . . . privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

We are of the view, therefore, that section 30, chapter 43, of the Session Laws of 1931, is valid. The judgment of the lower court is affirmed.

ROSS and LOCKWOOD, JJ., concur.