220 P.2d 229

**In re LEWKOWITZ et al.**

**No. 5235.**

Supreme Court of Arizona.

June 29, 1950.

Alfred C. Lockwood, of Phoenix, for State Bar of Arizona.

Fred C. Struckmeyer, of Phoenix, Louis B. Whitney, of Phoenix, for respondent Herman Lewkowitz.

Mark Wilmer, of Phoenix, for respondent Raymond R. Wein.

Fred A. Ironside, Jr., of Phoenix, of counsel.

Wm. H. Westover, of Yuma, amicus curiae.

UDALL, Justice.

This court on January 16, 1950, in the case of In re Lewkowitz, 69 Ariz. 347, 213 P.2d 690, by unanimous decision granted motions to vacate, quash and dismiss an order to show cause directed against respondents. The basis for the decision was that the title to the State Bar Act, Laws 1933, ch. 66,—now appearing as Art. 3, Ch. 32, A.C.A.1939, under which the disciplinary proceedings against respondents were brought, violated the constitutional provision, Art. 4, pt. 2, sec. 13, requiring that every act shall embrace but one subject and matters properly connected therewith, and that such subject shall be expressed in the title.

The State Bar of Arizona timely filed a motion for rehearing, the gist of which was

"that the court in its opinion laid down some eight rules of statutory construction as definitely established and then reached a conclusion in regard to the sufficiency of the title of the State Bar Act which is non-sequitur as to those premises and inconsistent therewith." Because of the far reaching effect of its decision, and being somewhat in doubt as to its correctness, the motion for rehearing was granted. The matter was again thoroughly briefed by counsel for the respective parties, as well as by amicus curiae, and the case was then orally argued before the court. The judges, after each making a painstaking review of the entire matter, are divided in their opinions as to the correctness of our former holding, the majority being now convinced that the motions to quash and dismiss were improvidently entered.

To avoid repetition we adopt, without reiterating, the first portion of the original opinion down to and including the eight rules of statutory construction set forth therein save and except as to rule No. 7.

Before discussing the precise objections raised to the sufficiency of the title to the act in question or considering the other technical objections to the preliminary steps so far taken in these disciplinary proceedings, we deem it advisable to set forth briefly a recital of the history and purpose of the national movement to integrate the bar. Our source material, in the main, is taken from the Journals of the American Judicature Society, which is recognized as an authority on the matter as it took the lead in the movement for integration. The word "integration" is defined as: "Act or process of making whole or entire". Websters New International Dictionary, 2d Edition.

The voluntary state bar organizations in existence proved to be impotent to carry on the high purposes and noble aspirations of the legal profession for the simple reason that they were composed only of a small minority of those eligible to its membership. This weakness was readily apparent to the leaders in the legal profession and a program was initiated shortly after the turn of the century to secure the adoption of the principle of a unified bar as a means of correcting the ills existing within the profession. It was a long hard battle that involved educating both the laity and the individual lawyer to the necessity for a virile state bar, one that could speak authoritatively, as Charles Evans Hughes expressed it with a "commanding voice". Such a body if it was to have alike the confidence and respect of the profession and the laity, necessarily had to be self-governing, all-inclusive and unified. Partial victory has crowned these efforts, for since the year 1920, integration had been accomplished in twenty-one states, either (a) by legislative enactment such as occurred in Arizona with the adoption of the State Bar Act, (b) by rule of court, without statutory authority, in the exercise of its inherent power, or (c) by enactment of a statute conferring

authority upon the highest court of the State to integrate the bar.

■ It is a matter of which we take judicial notice that here in Arizona, prior to the passage in the year 1933 of the act in question, considerable spade work was done looking toward integrating the bar. The matter was perennially discussed at meetings of the old bar association with attendant publicity. A measure to accomplish this purpose was introduced but failed of passage in the Tenth Legislature (1931). The title to that proposed act read: "An Act to Create a Public Corporation to Be Known as 'The State Bar of Arizona.' To Provide for Its Organization, Government, Membership, and Powers, to Regulate the Practice of Law and Provide Penalties for Violation of Said Act", and this identical title appeared on the similar measure when introduced in the Eleventh Legislature (1933). Why the title was subsequently changed to read as it now appears in the enacted measure can only be a matter of conjecture.

It is highly significant that without exception where the integration of the bar has been accomplished, irrespective of which route was followed in accomplishing that purpose, one of the principal provisions, found either in the rules or the act, provided a method for the admission and discipline of members of the bar. It should also be noted that the power to admit to practice or to disbar is not made absolute in any bar act. The bar is given power to "determine the qualifications for admission to practice", A.C.A.1939, § 32-327, and to conduct examinations, but the Supreme Court continues, as it has always done, to have the ultimate say as to who shall be admitted to practice law. The same is true of disbarment and lesser disciplinary actions. The integrated bar, acting through its grievance committees, conducts hearings, summarily dismisses charges found to be without merit, and certifies up to the board of governors the record in those cases in which it deems the evidence justifies further action. The board of governors then conducts further proceedings before such matter is brought before the Supreme Court for final hearing and determination. In the final analysis this court becomes the ultimate triers of the issues of fact as well as of law. In re Sweeney, 51 Ariz. 9, 73 P.2d 1349; In re Greer, 52 Ariz. 385, 81 P.2d 96.

The title in question, reading, "An act relating to the state bar, and creating a public corporation to be known as 'The State Bar of Arizona'", when read in the light of its historical purpose takes on added significance. True, the title is brief and concise but the question posed is this: Is it sufficiently broad to permit in the body of the act provisions which, in aid of the powers and duties of said incorporated bar, states a method for the discipline of members of the bar? In other words, is this matter of discipline germane to the subject expressed in the title? Germane is defined

as "closely allied, appropriate, relevant". Webster's International Dictionary, Second Edition. This excellent statement appears in 23 Cal.Jur. 649: "* * * A provision which conduces to the object of the act, or which is auxiliary to and promotive to its main purpose, or has a necessary and natural connection therewith is germane, * * *." Also see Evans v. Superior Court, 215 Cal. 58, 62, 8 P.2d 467; Dolese v. Pierce, 124 Ill. 140, 16 N.E. 218, 220.

■ We agree that the subject of the title is "an act relating to the state bar", which term we construe to be synonymous with "an act relating to attorneys at law", see In re Miller, 29 Ariz. 582, 244 P. 376, and that the subsequent clause in said title reading, "and creating a public corporation to be known as the 'State Bar of Arizona' ", is a limitation upon the first part of the title. State v. Pelosi, 68 Ariz. 51, 199 P.2d 125; Valley Nat. Bank of Phoenix v. Glover, 62 Ariz. 538, 159 P.2d 292. Hence it follows that the scope of legislation in the body of the act is limited to the same extent as the title, i. e., to the incorporation of the State Bar of Arizona. Statutory rule of construction numbered (3) set forth in the original opinion provides: "That any provision of the act directly or indirectly relating to the subject expressed in the title and having a natural connection therewith, and not foreign thereto, should be held to be embraced in it." (Citing cases.) [213 P.2d 690, 692.]

The title to the Arizona State Bar Act is probably one of the shortest and broadest in its terms of any such acts. However the following titles of similar acts from other states have been held sufficient: "An Act to create [No.] 256.31 of the statutes, providing for the organization and government of the state bar of Wisconsin." Re Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604, 12 N.W.2d 699, 151 A.L.R. 586.

The Michigan title reads: "An act to create the state bar of Michigan; and to authorize the supreme court to provide for the organization, regulation and rules of government thereof." Act 58, 1935, p. 89.

The South Dakota title, which has never been questioned, reads: "An Act entitled, An Act Providing for the Creation and Establishment of an Association to be Known as 'The State Bar of South Dakota', to Provide for its Organization, Membership and Powers." Ch. 84, Laws 1931.

The Idaho case of Jackson v. Gallet, 39 Idaho 382, 228 P. 1068, referred to in the original opinion was cited by way of illustration to indicate the extent to which some courts had gone in restricting legislation even under a rather full title. It was not intended on our part to be an approval of the restrictive rule therein stated.

The following cases involving titles which simply provide for the "creation of a corporation" (as does the title under consideration) are well reasoned and persuasive though admittedly not squarely in point

as they deal with political subdivisions: Inhabitants of Montclair Tp. v. Ramsdell, 107 U.S. 147, 2 S.Ct. 391, 27 L.Ed. 431, which cites and quotes from State v. Town of Union, 33 N.J.L. 351. See also Detroit v. Detroit Citizens' Street R. Co., 184 U.S. 368, 22 S.Ct. 410, 46 L.Ed. 592; Blair v. City of Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801.

As we view it, one of the primary purposes of integrating any state bar through its incorporation was and is to place upon the bar itself the duty and responsibility of disciplining its members. See model bar association act found in Vol. 2, page III (October, 1918) Journal of the American Judicature Society. Hence it follows that provisions relative to disciplinary action and disbarment of its members are germane to this subject because they are closely allied and relevant to the idea of an integrated bar and promotive of one of the main purposes sought to be accomplished thereby.

Even though we are convinced the matter of disbarment is germane to the subject, the question next arises, is the title definite enough to apprise the lawmaking body and those interested therein or affected by the terms of the act that there will be found therein a provision in regard to disbarment. Rule 7 taken from 59 C.J., Statutes, Sec. 387, was set forth in the original opinion as a yardstick by which this question was to be determined. We disagree with and disapprove of this rule

in so far as it holds that in determining the extent and sufficiency of notice given by a title one may not be aided by "suggestions or inferences which may be drawn from knowledge de hors the language used". From the cases cited in the footnote to the text statement we observe that it was apparently taken from an 1894 opinion in the case of Commonwealth v. Samuels, 163 Pa. 283, 29 A. 909, 910, reading: " * * * Suggestions or inferences which may be drawn from knowledge dehors the language used are not enough. The constitution requires that the notice shall be contained in the title itself. (Citing cases.) * * * " The Constitution of Pennsylvania, at that time, provided: "No bill except general appropriation bills, shall be passed containing more than one subject, which shall be *clearly* expressed in its title." (Emphasis supplied.) Art. 3, Sec. 3, Const. 1874, P.S. ⸱ The text writers in 50 Am.Jur., Statutes, Sec. 174, point out that the use of the word "clearly" is regarded as intending to require greater precision in the title than is indicated by the use of the word "expressed" without a qualifying term. It will be noted that the Arizona constitutional provision does not contain a qualifying term.

In our opinion the better rule, which is supported by the great weight of authority, is to the effect: " * * * It has therefore been held that the title is sufficient if it is not productive of surprise and fraud, and is not calculated to mislead

the legislature or the people, but is of such character as fairly to apprise legislators, and the public in general, of the subject matter of the legislation, and of the interests that are or may be affected thereby, *and to put anyone having an interest in the subject matter on inquiry.*" (Emphasis supplied.) 50 Am.Jur., Statutes, Sec. 167.

The following excerpts from reported cases will suffice to show the application and acceptance of this rule:

"The title is a label not an index. Its function is to give notice of the effect of the legislation to one coversant with the existing state of the law, and its validity is not to be determined by nice distinctions of etymology or definitions of words, *but by the facts of the case and the history of the legislation.*" (Emphasis supplied.) Ott v. Braddock, 119 N.J.L. 507, 197 A. 271, 274.

"* * * We have many times held that the title of a statute need not be a complete index of its provisions, but it is sufficient if it so indicates its substance and scope *as reasonably to lead to an inquiry into its content.*" Cory v. Nethery, 19 Wash.2d 326, 142 P.2d 488, 490. (Emphasis supplied.)

We find that even the State of Pennsylvania that gave birth to the unsound rule No. 7 heretofore referred to has stated in the recent case of Lehigh Nav. Coal Co. v. Pennsylvania Public U. Com'n, 133 Pa. Super. 67, 1 A.2d 540, 546: "* * * A title need not be an index or synopsis of an act, yet it must not mislead. (citing case). *It is enough if it gives such notice of the contents of the act as to put the reader to further inquiry.* (Citing case.)" (Emphasis supplied.)

It is our view that the decisions of this court in the cases of Board of Control of State of Arizona v. Buckstegge, 18 Ariz. 277, 158 P. 837, 840; In re Miller, 29 Ariz. 582, 244 P. 376; Taylor v. Frohmiller, 52 Ariz. 211, 79 P.2d 961; and Morris v. State, 40 Ariz. 32, 9 P.2d 404, are in harmony with the rule now reaffirmed for in them we say that the title is sufficient if it is germane and indicates, in a general way at least, what is to follow in the way of legislation.

Actually the principle of self government is the very essence of an integrated bar and if the provisions relative to admissions and discipline were emasculated it would leave but an empty shell. When considered in this light, we believe the only reasonable conclusion that can be drawn from the title in question by the average legislator and those having an interest in or affected by the legislation proposing integration is that contained in such legislation there would be found such closely allied, relevant and germane provisions as those having to do with disciplinary action. A contrary holding would violate the rule forbidding a strained and narrow construction of titles. Hancock v. State, 31 Ariz. 389, 254 P. 225.

It is our considered opinion, and we now hold, that the title to the State Bar Act was sufficient to meet the constitutional requirement.

The other three grounds relied upon by respondents in support of their motions to dismiss do not require such extended consideration.

Point number II reads: "The State Bar Act contains no legal predicate for disciplinary proceedings, and disciplinary action under the act is without authority of law."

It is urged that while the State Bar Act, Sec. 32–337, A.C.A.1939, empowers the board of governors and local administrative committees appointed by them to initiate and conduct investigations, take and hear evidence and hold hearings on all matters affecting or relating to the discipline of members of the state bar, yet nowhere in the act itself does it define or delineate what conduct warrants disbarment, suspension or discipline. It is contended therefore that there is a complete failure to provide the board or committees with a lawful subject matter. Section 32–328, A.C.A.1939, expressly grants to the board of governors, with the approval of the Supreme Court, the power to formulate and enforce rules of professional conduct for members of the bar and a wilful breach of the same is made punishable under Sec. 32–332, A.C.A.1939, as the Supreme Court may direct. It appears from the record before us that rules of procedure of the State Bar of Arizona and canons of professional ethics were formulated and promulgated by the board of governors on November 4, 1933. Incidentally it appears that the clerk of this court was furnished an adequate supply of the pamphlets containing these matters which have been used over the past years for distribution to those interested and to the new members of the bar upon their admission. However the minutes of this court are silent as to any formal approval of these rules and canons of ethics and it is this omission that the respondents partially rely upon to vitiate these proceedings.

Respondents were charged with violating canons of ethics numbered 32, 34 and 38 which deal with corrupting a public officer, division of fees and accepting rebates. Certainly such conduct, if true, comes within the terms of the State Bar Act, Sec. 32–329, A.C.A.1939, relative to "conduct warranting disbarment, suspension or discipline". We consider it unnecessary to determine in this proceeding the abstract question as to whether the only grounds for disbarment under the act are those contained in such rules of professional conduct. While the statute, Sec. 32-332, supra, provides no specific manner by which this court shall approve the rules adopted under the act, we are of the opinion that said rules and canons of ethics have in reality been approved by the actions of this court in the dozen or more disbarment pro-

ceedings heard by it since the adoption of the rules. These cases, from In re Myrland, 45 Ariz. 484, 45 P.2d 953, decided in the year 1935, to In re Rutherford, 1949, 68 Ariz. 156, 202 P.2d 904, have either specifically or impliedly stated or assumed that they had been so approved. This we deem to be sufficient although the better practice, of course, would have been the entering of a formal written order.

The contention under respondent's point III is that they were denied administrative due process in the hearing held before the local administrative committee at Globe, Arizona, on November 23, 1948, in that they were not accorded their rights under Sec. 32-338, A.C.A.1939. This section commands that fundamental rights be protected, i. e. that the respondents be given reasonable notice of the hearing and an opportunity to defend against the charges " * * * by the introduction of evidence, and the right to be represented by counsel, and to examine and cross-examine witnesses * * *".

■ First it is urged that the ten days allowed to answer the formal charges set forth in the order to show cause was insufficient and unreasonable and therefore lacking in due process. Rule 11(2) of the rules of procedure of the State Bar provides for five days notice but the committee allowed ten days, due no doubt in part to the fact that the hearing was to be held outside the county of respondents' residence. It should be stated that the matters involved in the charges against respondents were not complicated. Furthermore preliminary investigations had been carried on for months prior to the issuance of the formal order to show cause and sometime previously the respondents had accepted an invitation of the committee to appear informally before them and give their version of the matter. Hence the possibility that charges might be brought against them was reasonably foreseeable prior to the serving of the order to show cause.

■ The other objection as to lack of due process is that respondents were denied a continuance and thereby deprived of the right to cross examine the witnesses called to testify before the committee. We shall not encumber this already lengthy opinion with a detailed recitation of the situation presented when the motion for continuance was denied. Suffice it to say that we have made a careful analysis of the record and are convinced that the committee did not abuse its discretion in denying said motion. The respondents therefore cannot complain that they were denied an opportunity to cross examine witnesses. We hold therefore that respondents were not denied due process either on account of the shortness of the notice or the refusal to grant a continuance.

■ Finally under point IV respondents challenge as insufficient the order to show cause issued by this court under the provisions of Sec. 32-329, supra, for the rea-

son it does not set forth therein the specific charges respondents are required to meet and hence they assert it is void as lacking in due process. When it is remembered that the proceedings were not initiated in this court but before a grievance committee, and that as an integral part of the order to show cause issued by the committee there was included a detailed specification of the charges to which respondents were to reply, and that thereafter hearings were had thereon before the board of governors prior to the time the matter was certified by the latter to this court, it would seem that respondents are rather naive to be suggesting that they are in the dark as to the charges they are required to meet before this court. This challenge is wholly without merit.

The order heretofore entered granting respondents' motions to quash and dismiss is vacated and it is now ordered that the motions to vacate, quash and dismiss the order to show cause in this matter be and they are hereby denied.

LA PRADE, C. J., and STANFORD and DE CONCINI, JJ., concur.

PHELPS, Justice (dissenting).

I do not agree with that portion of the majority opinion relating to the sufficiency of title. I find no serious fault with other portions of the decision.

After extensive research and study of the law involved in the above entitled cause and after long and concerted deliberation ·

this court on January 16, 1950 rendered what was then the considered judgment of its individual members. It then declared · the title to the State Bar Act of Arizona to be wholly insufficient to meet the requirements of the State Constitution relating to titles and that the act was therefore unconstitutional.

Although it has been an unbroken rule of this court, so far as I know, that rehearings will not be granted where the points urged amount only to a reargument of propositions of law already considered, Love v. Bracamonte, 29 Ariz. 357, 241 P. 514; or to reopen the whole case in order to review a former decision, yet that seems to have been exactly what has been done in this case. No additional authorities have been cited to sustain appellee's position; no specific reason has been assigned that was not fully presented in its original brief, and no argument has been made on the rehearing that is different or at all persuasive to the effect that this court in its original opinion either misconstrued the constitutional provisions under consideration or misapplied the facts thereto.

Attorneys for appellee have again called our attention to the case of In re Miller, 29 Ariz. 582, 244 P. 376, and it is again asserted (with which the majority now agree) that the title "Attorneys at Law" is sufficient to give notice to those who may be interested in the act that it would carry provisions relating to admission, discipline and disbarment of attorneys. They again.

assert, to which the majority assents, that "Attorneys at Law" is synonymous with "An Act Relating to the State Bar."

As pointed out in the original opinion the court in the Miller case did not have before it for its consideration the question of whether a provision for admission to practice law might be properly included in an act entitled "Attorneys at Law." The court had before it not only that title but in addition thereto and as a part thereof, the title of chapter 76, Laws of 1907, Territory of Arizona, and the title: "An Act to Regulate the Admission to Practice of Attorneys at Law and the Disbarment of Attorneys and Defining the Rights, Duties and Privileges of Attorneys at Law." The latter title was the one under which section 2, chapter 24 of the Acts of the First Legislature was enacted. That act was amended by chapter 43, Session Laws of 1919, containing among other things and as a part thereof, the words "Attorneys at Law."

In State ex rel. Pardee v. Latourette, 168 Or. 584, 125 P.2d 750, 754, the court said: "It is sufficient for the title of an act to amend a particular section of the Code or other compilation of laws, to specify the section to be amended, without in any way indicating the subject-matter of the section, and, under such a title, any legislation is proper which could have been included in the original act." (Citing cases.)

We can see from this statement of the law that it was not only the right but the duty of the court in its decision in the Miller case to consider and treat the title to chapter 24 of the Acts of the First Legislature as a part of chapter 43, Session Laws of 1913 as much so as if it had been incorporated verbatim in the latter title.

The decision of the court in the Miller case to the effect that the title "Attorneys at Law", standing alone, was sufficient to meet the constitutional requirements, was therefore pure dictum. I recognize the principle that the court has the right to assign more than one ground for sustaining or overruling a judgment of the lower court but the decision in the Miller case does not fall within that category.

In the Integration of Bar Case, 244 Wis. 8, 11 N.W.2d 604, 12 N.W.2d 699, 151 A.L.R. 586, cited in the majority opinion as authority for the sufficiency of the title, in the instant case the question of the sufficiency of the title was not even remotely at issue. That point was not raised and not one reference is made in the opinion to the sufficiency or insufficiency of the title nor is there any other similarity in that case to the instant case. The Wisconsin legislature simply authorized the supreme court to integrate the bar. The supreme court of Wisconsin had the inherent power to do that without legislative aid and it so held in that case. The primary contention there was that the legislature had not validly passed the act in question for the reason that the concurrence of the House with the Senate

was not passed by a two-thirds majority after a veto by the governor. There were other questions raised but like this one were wholly immaterial to the issues in this case.

The title in the South Dakota Act cited by the majority as authority for their decision includes a provision for the *organization, membership and powers* of the association and in the Michigan title it provided for the *organization, regulation and rules of government thereof*. These provisions are not in the title of the act under consideration. If they were they would present an entirely different picture to what we have. Among the states of the Union which have passed legislation integrating the bar the acts of California, Louisiana, Nevada, North Carolina, Oregon, Oklahoma, Washington, Kentucky, Utah and Wyoming all contain provisions for the organization, government and powers of the bar and in all but two of these states the title expressly provides for the admission, discipline and disbarment of attorneys. The integration of the bar in many of the other states referred to in the majority opinion has been accomplished by the exercise of the inherent powers of the supreme court of the respective states and not by legislative enactment. Therefore the majority opinion in this case finds no support in the titles of any of the acts throughout the country relating to the integration of the bar.

I have no quarrel with the soundness of the law contained in the excerpts quoted in the majority opinion. These principles were approved in the original opinion. The difficulty is in their application.

No one could logically argue that the title must index the act. But the contents of the act must not only be germane to the title but must at least indicate in a general way what is to follow. This principle is set forth in the majority opinion as a sound principle of construction. I maintain that the title in the instant case utterly fails to meet the latter requirement. The cases of Inhabitants of Montclair Tp. v. Ramsdell, 107 U.S. 147, 2 S.Ct. 391, 27 L.Ed. 431; State v. Town of Union, 33 N.J.L. 351, and others cited in the majority opinion deal with municipalities (political subdivisions) and are conceded by the majority to be not in point as authority in the instant case. Thus it will be seen that the majority opinion constitutes a mere ipsi dixit of this court which in my opinion is without legal basis upon which to rest or logic to sustain it. Its effect is to repeal, amend or ignore the constitutional mandate contained in article 4, part 2, section 13 thereof and if followed will result in the recurrence of hodgepodge legislation which this constitutional provision was designed to prevent.

In addition to what was said in the original opinion I desire to further point out by way of illustration the unsoundness of the majority opinion on rehearing. Let us apply the yardstick used by the majority: Are the contents of the act in the instant case germane to the title and does the title in any way indicate, at least in a general

way, what is to follow in the way of legislation?

Let us suppose, as an illustration, that the act under consideration had fixed a minimum fee which must be charged in the various types of litigation handled by the legal profession and that it provided that any lesser fee charged by an attorney would constitute misconduct and subject him to discipline or disbarment. Certainly no one can say that the collection of a fee is not germane to the practice of law and the majority opinion stresses the germane feature of the act as being all-controlling. Such a provision would be just as germane to the title as the disbarment proceedings and the grounds therefor actually incorporated in the State Bar Act today. Would this court say in such a case that the title used in the State Bar Act would be sufficient to give notice of inclusion of a restriction on attorneys' fees and provide punishment for its violation? How does this differ from what was actually included in the act? If this decision is to be followed it opens the gate to surreptitious legislation which will enable other groups rendering services in which the public is vitally interested by paraphrasing the title used in the State Bar Act to secure the passage of measures which would materially affect the general welfare of the community.

The title of the State Bar Act when presented to the Eleventh Legislature for passage read as follows:

"An Act to Create a Public Corporation to Be Known as 'The State Bar of Arizona,' to Provide for Its Organization, Government, Membership, and Powers, to Regulate the Practice of Law and Provide Penalties for Violations of Said Act."

It is quite significant that the title was amended to eliminate the portion thereof relating to the regulation of the practice of law and for the disbarment of attorneys. Had this clause been retained it would have met every requirement of the constitution. The emasculated title here under consideration is strongly indicative that the legislative intent was to deny to the integrated bar the power to establish new grounds and new proceedings for the disbarment of attorneys. Especially does this seem to be a logical conclusion in view of the fact that at the time of its passage there was then upon the statute books of this state a law providing for the admission, the discipline and the disbarment of attorneys practicing within the state. That law is still in full force and effect.

The majority opinion in setting up the historical background of the act upon which it relies, in part, for the conclusion reached suggests, in substance, that its failure of passage at a previous session of the legislature, under its original title, was probably due to the fact that it was necessary for the processes of education to operate upon the "lawyer and laity" and inferentially upon the legislative mind before the advantages of an integrated bar could be

comprehended. If through these educational processes the legislative mind was finally rounded out to be "full-orbed and symmetrical" which resulted in the passage of the act, it would be interesting and most enlightening to know why that indoctrinated group struck from the title the portion thereof relating to discipline and disbarment and retained in the body of the act a provision for such action. I prefer to ascribe it to inadvertence rather than to deliberate design.

Personally I whole-heartedly believe in the integrated bar and although assuming none of its burdens, as a Judge I feel a personal pride in its activities and accomplishments both as applied to the State and County Bar. Although I regret that obedeience to my conscience compels me to pursue a course of action in this matter which if adhered to by a majority of the court would temporarily inconvenience the integrated State Bar in the exercise of its functions, this is but a fleeting expediency and unimportant. The interpretation of a constitutional provision is most important. Any decision which tends to lead us away from constitutional moorings found from experience to be necessary for the promotion of the general welfare should be studiously avoided. I know of no greater disservice that could be done to the bar of the state than for this court through judicial decision to fail in its duty to preserve inviolate our fundamental law.

Respondents' motions to quash and dismiss should be granted.